### EBENEZER SMITH *vs.* BOSTON AND MAINE RAILROAD.

After the taking of land for a railroad, the owner of the land and the railroad company mutually entered into bonds, each to the other, each bond reciting the taking of the land and an agreement between the parties to submit the estimate of the value thereof, and the damages occasioned by the laying out, making and maintaining of the railroad, to arbitrators; and the bond of the owner provided that he should execute and deliver to the company a deed of the land so taken, on tender by them to him of the amount which the arbitrators should by their award direct to be paid, such amount to be paid one half in shares of the capital stock of a railroad company whose railroad connected with that for which the land was taken, at the par value thereof, and the other half in cash or in said stock, at his option, and in all respects to abide by and perform the award; and the bond of the company provided that they should duly pay to the owner the amount which the arbitrators should by their award direct to be paid, in the manner above stated, and in all respects abide by and perform the award. The arbitrators made and published their award, and the company tendered performance on their part, and requested the owner to elect the method in which he would receive payment, which he declined then to do. He prepared no deed and made no election, and did not request performance by the company, for many years, and then brought an action upon their bond. *Held,* that the stipulations in the two bonds were mutual and dependent, and that the action could not be maintained; although the company subsequently to their tender cancelled the certificates of stock tendered to him, and, in pursuance of an act of the legislature passed after the making of the award, united with the company whose railroad connected with theirs.

Bonds mutually entered into at the same time between two parties, each to the other, respecting the same subject matter, will be construed as dependent upon each other, and either party who seeks to enforce the stipulations entered into by the other must be ready to perform his own.

CONTRACT upon a bond, dated August 24, 1844, executed by the Boston and Maine Railroad Extension Company to the

plaintiff, in the penal sum of $30,000, the condition whereof was as follows:

" The condition of this obligation is such that whereas the said company have taken, pursuant to law, for the purpose of their railroad, a certain parcel of land belonging to said Smith, situate between Canal Street and the canal, so called, in said Boston; and the said company and said Smith have agreed to submit the estimate of the value of the land so taken, and the damages occasioned by laying out and making and maintaining said railroad over said Smith's land, to the determination of three arbitrators, appointed in manner following, viz : the said company and said Smith have mutually appointed the Hon. John M. Williams, of said Boston, to be one of and the chairman of said arbitrators, and have agreed that the other two arbitrators shall be appointed, one by said company, and the other by said Smith; and that in case either of them shall neglect, for fifteen days from the date hereof, to appoint the arbitrator so to be appointed by said company or by said Smith, then that the said Williams shall have authority, by his own appointment, to fill the vacancy or vacancies so remaining among said arbitrators ; the award of such arbitrators, or of the major part of them, given in writing under their hands, to be final, and binding upon the parties to said submission :

" Now if the said company shall duly pay to said Smith, his executors, administrators and assigns, the amount which the arbitrators selected and appointed in manner aforesaid, or the major part of them, shall, by their award in writing under their nands, direct to be paid by said company to him, such amount to be paid, one half in shares in the capital stock of the Boston and Maine Railroad Company at the par value thereof, free from liability to assessments, and the other half in cash or in said stock at the election of said Smith, and in all respects abide by and perform the said award, then this obligation shall be void, otherwise shall remain in full force."

The first count of the declaration alleged that whereas the Boston and Maine Railroad Extension Company, a corporation, had taken for the purpose of their railroad certain land of the

plaintiff, as above described, they duly executed the bond above set forth; that the plaintiff, within the fifteen days, appointed George T. Bigelow, and the Boston and Maine Railroad Extension Company appointed John P. Thorndike, respectively, as arbitrators; that the three arbitrators, having heard the parties, did, on the 8th of February 1845, make and publish their award in writing, which, after reciting the submission, &c. was as follows: " Now know ye, that we, the said John M. Williams, George T. Bigelow and John P. Thorndike, arbitrators as aforesaid, having taken upon ourselves the charge of the said award and arbitrament, and having deliberately and at large heard, examined and considered the allegations, witnesses, and evidence of both the said parties and their counsel, whom we met on divers days and times for that purpose, have determined and awarded, and do hereby determine and award, and do therefore make and give in writing this our determination, judgment and award between the said parties, of and concerning the premises in manner and form following, to wit: We do estimate, determine and award that the value of the said parcel of land so taken as aforesaid, and the damages occasioned by laying out and making and maintaining said railroad over the said Smith's said land, amount to the sum of forty thousand dollars; and we do accordingly direct, by this award, the said amount of forty thousand dollars to be paid by the Boston and Maine Railroad Extension Company to the said Smith, pursuant to the terms and conditions in the bonds aforesaid contained, in full satisfaction and discharge of and for his land and damages aforesaid; " that by an act of the legislature of Massachusetts, approved March 19th 1845, the Boston and Maine Railroad Extension Company and the Boston and Maine Railroad were authorized to unite themselves in one corporation, to be called the Boston and Maine Railroad, on vote of the stockholders of each corporation, with all the rights and powers and subject to all the duties and obligations of said two corporations, by virtue of their respective charters; that by a vote of the stockholders of each corporation passed September 10, 1845, they became so united, whereby the defendants became, from and after such

union, bound to perform said award; that since the making of the award the plaintiff has always been and is now ready upon tender to him of payment of said $40,000 as aforesaid, to execute and deliver a deed, as provided in said bond; and that neither of said railroad companies has paid or tendered said sum, or performed said award. And for a further and alterna-tive breach the plaintiff averred that he has always been ready to make his election of said money or stock, and upon tender or payment to him of said $40,000 in money or stock, at his elec-tion, as aforesaid, to execute and deliver the deed; but that under said legislative act and vote of stockholders the two rail-road companies became united, so that since their union he could make no effective election, because the stock could not thereafter be paid to him, as the same existed at the time of making the covenant and award.

The second count set forth the same facts, but treated the bond as a bond merely, the condition of which had been broken, and alleged that the penalty, with interest from the breach, to wit, date of the award, was due.

The answer admitted the taking of the land as alleged, and set forth that on the 24th of August 1844 the plaintiff and the Boston and Maine Extension Company made and entered into a mutual agreement to submit the estimate of the value of the land so taken, and the damages, to arbitration, which agreement was completed by putting the same into the form of two bonds, with similar preliminary recitals, which were executed by the plaintiff and said company and mutually delivered, the condi-tion of that from the company to the plaintiff being set out above, and the condition of that from the plaintiff to the com-pany being as follows:

" Now if the said Smith shall duly execute and deliver to the said company a good and sufficient deed of his, said Smith's, right and title to the land so taken by them, containing a release of his wife's dower and a covenant of warranty against all in-cumbrances made or suffered by said Smith, on tender by said company to him of the amount which the arbitrators, selected and appointed in manner aforesaid, or the major part of them,

shall, by their award in writing under their hands, direct to be paid by said company to him, such amount to be paid one half in shares of the capital stock of the Boston and Maine Railroad Company, at the par value thereof, free from liability to assessment, and the other half in cash or in said stock, at his option, and in all respects abide by and perform the said award, then this obligation shall be void, otherwise shall remain in full force."

The answer further set forth that the arbitrators made their award, as above recited; that as soon as the Boston and Maine Railroad Extension Company were notified thereof, they tendered to the plaintiff $20,020 in cash, and two certificates each of two hundred shares of the capital stock of the Boston and Maine Railroad, according to the terms of the award, and requested the plaintiff to make his election whether he would take the amount of the award, one half in stock, and the other half in money or in stock, as provided in the award, and he then declined to take any stock or money, and refused to make any election, and has so refused ever since; and that the said writing set out in the declaration does not by itself contain any agreement, but that said writing and the writing signed by the plaintiff both constitute one and the same contract, and were part of the same transaction. The answer further denied the plaintiff's allegations of readiness on his part to perform, and of failure by the company to tender performance on their part; admitted the union between the two companies as alleged; denied that this prevented the plaintiff from making an effective election; averred that from the time of the tender until the union of the two companies the Boston and Maine Extension Railroad Company were ready and willing to perform the award, and ever since the union the defendants have been ready and willing to perform it, and that until the election of the plaintiff no payment other than the offer of tender and payment could be made to him; that at the time when the said writings were entered into, the plaintiff well knew that St. 1844, c. 172, incorporating the Boston and Maine Extension Railroad Company, authorized the corporation then existing under the name of the Boston and

Maine Railroad Company to subscribe for the whole of the capital stock of the former company, and that they had so subscribed for the same, and had organized the former company, and that the two companies were to be united into one corporation as soon as arrangements therefor could be completed between them; and that ever since the union the stock of the defendants has been and now is more valuable than it was before the union.

At the trial in this court, before *Hoar*, J., it appeared that the two bonds were executed, as set forth in the pleadings; that the award before recited was published and notice thereof given to the parties on the day of its date; that on the 14th of February 1845, in pursuance of a vote of the directors of the Boston and Maine Railroad, the treasurer of that company filled up two certificates of its stock, of two hundred shares each, and procured $20,000, with $20 more for interest from the date of the award, with which he went, together with one of the directors, to the counting-room of the plaintiff, and told him that they had come to obtain a deed of the land, in compliance with his bond, and tendered to him the two certificates and money, telling him what they were, and stating to him that it was for him to elect whether he would take $40,000 in stock, or $20,000 in stock and $20,000 in cash; that the plaintiff replied that "he woul.. not take our money; that he wished to look into his rights to the land; and, when he wanted our money, he would send to us;" that these certificates were kept by the company till they were cancelled by a vote of the directors, March 29th 1845; that under *St.* 1845, *c.* 159, and St. of N. H. of 1845, *c.* 290, authorizing the union of the two railroad companies, they on the 10th of September 1845 voted to unite and become one corporation; that the defendants were always able to pay $40,000, on demand, or had the means of getting it at once; and that the two companies have always been in the possession of the land from the time of the taking until the present time. On the 18th of November 1846 the plaintiff by a writing under his hand and seal undertook to revoke, annul and determine all power and authority conferred by him upon the arbitrators. The various legislative acts of Maine, New Hampshire and Massachusetts,

respecting the said railroad companies, collected in 1 Railroad Laws and Charters, 96–109, 122, 131, 339–350, and 2 Ib. 139–160, 400, 401, were also put into the case.

Upon these facts the case was, by consent of parties, reserved for the determination of the whole court.

*B. R. Curtis & G. W. Phillips,* for the plaintiff. This is not an action on the award, but upon the agreement to keep the award. *Hodsden* v. *Harridge,* 2 Saund. 61, *n. Cole* v. *Chapman,* 2 Scam. (Illinois) 34. It is true that it would be necessary to look at both bonds to ascertain the terms of the submission. But that is not the question before us. The obligation of the defendants was to do something in consequence of the award. It was an absolute obligation to pay the amount of the award, without condition.

The defendants contend that they could not act until the plaintiff had made his election. But as to one half no election was necessary. It was the duty of the defendants to do all that they could to pass $20,000 in stock to him. *Wyman* v. *Winslow,* 11 Maine, 398. *Curtiss* v. *Greenbanks,* 24 Verm. 536, 541. *Smith* v. *Loomis,* 7 Conn. 110. *Des Arts* v. *Leggett,* 16 N. Y. 582. *Johnson* v. *Baird,* 3 Blackf. 182. *Barney* v. *Bliss,* 1 D Chip. 399. It was not sufficient to issue and tender to him the certificate. When he declined to receive it, two courses were open to them : either to go on and complete what they had commenced, and make him the owner, by keeping the stock in his name, so that he might receive the dividends and transfer it; or to treat the first steps as a nullity, and let everything subside into the condition in which it was before. They adopted the latter course, and cancelled the certificate ; and since then there has never been a moment when he was the owner of the shares, or entitled to claim anything as a shareholder.

By the union of the two corporations the defendants became unable to keep their agreement, so that, from that time at least, the plaintiff was excused from making an election. This union made such a change in the character of the stock as to enable him to say that it was no longer identical with that which he had agreed to take. Angell & Ames on Corp. § 537. *Middlesex*

*Turnpike* v. *Swan*, 10 Mass. 384. *Newcomb* v. *Brackett*, 16 Mass. 161. *Canada* v. *Canada*, 6 Cush. 15. *Ford* v. *Tiley*, 6 B. & C. 325.

From that time, the defendants could not perform their agreement, except by the payment of money; and the amount of the award, therefore, became due from them absolutely, in money *Lent* v. *Padelford*, 10 Mass. 230, 238. *Townsend* v. *Wells*, 3 Day, 330. *Fleming* v. *Potter*, 7 Watts, 380, 382. *M'Nitt* v. *Clark*, 7 Johns. 465. *Peck* v. *Hubbard*, 11 Verm. 612. *Gilbert* v. *Dunforth*, 2 Selden, 585.

If the plaintiff did not make his election within a reasonable time, the right accrued to the defendants to make the election, and thereupon to perform the award at once. His waiver to make an election, therefore, would constitute no defence.

If the tender of one half of the amount of the award was good, still in an action of debt a plea of tender is not a bar to the action, but to the recovery of damages. *Karthaus* v. *Owings*, 6 Har. & Johns. 134. *Savary* v. *Goe*, 3 Wash. C. C. 140. *Robinson* v. *Batchelder*, 4 N. H. 40, 44. *Manny* v. *Harris*, 2 Johns. 24, 30. *Kortright* v. *Cady*, 23 Barb. 490.

Interest should be computed on the amount of the award from its date. *Shockey* v. *Glasford*, 6 Dana, (Ky.) 9, 16. *Stevenson* v. *Maxwell*, 2 Comst. 408, 414, 415. *Van Rensselaer* v. *Jewett*, Ib. 135, 140. *Williams* v. *Sherman*, 7 Wend. 109, 112. *Still* v. *Hall*, 20 Wend. 51, 52. *Dike* v. *Greene*, 4 R. I. 285, 300. *M'Kennan* v. *Sterrett*, 6 Watts, 162.

*B. F. Thomas & C. P. Judd*, for the defendants. If the plaintiff was not prevented from making an election by any act of the defendants, or discharged by them from the obligation of making it, such an election was a condition precedent to any obligation on their part. *Ranay* v. *Alexander*, Yelv. (Amer. ed.) 76. *Vyse* v. *Wakefield*, 6 M. & W. 443, 454, 456. *Caldwell* v. *Blake*, 6 Gray, 409. *Pomroy* v. *Gold*, 2 Met. 500. *Miller* v. *Illinois Central Railroad*, 24 Barb. 312, 328. Until the union of the two companies, there certainly could be no such prevention by any act of ours. But the effect of the union was not such that the plaintiff was not bound to take the stock afterwards.

The substantial character of the stock was not thereby changed. The Extension Company was incorporated for the purpose of extending the Boston and Maine Railroad to Boston; and the latter company were authorized to subscribe for its entire stock. The stock of the Boston and Maine Railroad, with this union, was the very stock which these parties contemplated in their submission. Besides; the plaintiff avers and relies on the validity of the union, in order to charge the present defendants. The union did not impair his rights. It was a legal union. The parties entered into the submission with an understanding of the law which entered into and qualified it, that the charters of the corporations might be so changed by the legislature as not merely to subserve private interests, but public interests. There is in all charters an inherent liability to be altered. · And the alteration in this case was in furtherance of the original design. See Redfield on Railways, 85, 94, 95, 219, 227, 623, and cases cited.

If the plaintiff was not bound to take this stock, after the union, he might have taken it if he had chosen to do so. And so long as he had a right of choice, no duty devolved upon the defendants until his choice was indicated.

The defendants' offer to perform was well made. The question does not rest upon the ground of a strict legal tender. The defendants were to have a fee in the land; and they made the offer because it might be convenient to them to be able to show such offer for the purpose of obtaining the deed. The true rule, however, is, that whenever the plaintiff made his election, the defendants were to have a reasonable time to perform on their part. Besides; the plaintiff promised to give them notice, and this was a waiver of a further offer, until notice was given. The contract was entire.

There has been no proffer of a deed. The offer to perform by the plaintiff must be concurrent with his claim upon the defendants. 1 Chit. Pl. (6th Amer. ed.) 359. *Matthews* v. *Matthews*, 2 Curt. C. C. 105, 117. *Cole* v. *Blunt*, 2 Bosw. 116, 125, 126. *Johnson* v. *Wygaut*, 11 Wend. 48. *Payne* v *Lansing*, 2 Wend. 525. *Tinney* v. *Ashley*, 15 Pick. 546, 552. It was an essential

consideration that the defendants should have a deed of the fee.

If the plaintiff can recover on either count of his declaration, he cannot have interest before the date of the writ. *Collett* v. *Newnham,* 1 Drewry, 447. *Johnson* v. *Durant,* 4 C. & P. 327. *Stevens* v. *Barringer,* 13 Wend. 639. *Gillespie* v. *Mayor, &c. of New York,* 3 Edw. Ch. 512, 514. *Warner* v. *Thurlo,* 15 Mass. 154. *Bank of United States* v. *Magill,* 1 Paine C. C. 661.

CHAPMAN, J. It appears that on the 24th of August 1844 the plaintiff and the Boston and Maine Railroad Extension Company each executed to the other a bond. The Extension Company had, by virtue of their charter, taken a parcel of the plaintiff's land for their road, and it had been agreed that three arbitrators should determine its value; that the plaintiff should convey to the company his title to it, with release of dower; and that they should pay him the appraised value, one half in stock of the Boston and Maine Railroad Company, and the other half in cash or in the same stock, at his election. The bond of the plaintiff required him to make the conveyance on tender of the amount to him, and the bond of the company required them to pay him the amount.

The arbitrators made an award on the 8th of February 1845, appraising the land at $40,000, to be paid pursuant to the terms and conditions of the two bonds. On the 14th of February 1845 the treasurer of the Extension Company, accompanied by one of the directors, went to the plaintiff's counting-room, taking with him two certificates of stock of two hundred shares each, the par value of each share being $100, and taking also $20,000 in cash, with $20 additional as interest from the date of the award, and offered the same to the plaintiff, requesting him to elect whether he would take the stock or the cash, and also requesting a deed, in compliance with the plaintiff's bond. The plaintiff declined to take either the money or the stock, and said he wished to look into his rights to the land, and when he wanted the money of the company he would send to them. After a delay of many years he brings the present action, having made no offer or request, except what is contained in the declaration.

Though the contract was made by the Extension Company, the action is brought against the defendants, on the ground that, by *St.* 1845, *c.* 159, the defendants and the Extension Company were authorized to unite themselves in one corporation, and by vote of the stockholders of each corporation, passed September 10th 1845, they became united, and have ever since been one corporation, and therefore the defendants are liable to perform this contract. This position is not denied, and it is undoubtedly correct.

But the defendants contend that the plaintiff has not done enough to entitle him to maintain the action, because the stipulations in the two bonds are mutual and dependent. The court are of opinion that this defence must prevail. The fact that the instruments were separate makes no difference. *Makepeace* v. *Harvard College*, 10 Pick. 302. The mutuality and dependence result from the language of the parties. The Extension Company agree to pay to the plaintiff the amount to be awarded by the arbitrators, " such amount to be paid, one half in shares of the capital stock of the Boston and Maine Railroad Company, at the par value thereof, free from liability to assessments, and the other half in cash or in said stock, at the election of said Smith." The plaintiff agrees to execute and deliver to the company a good and sufficient deed of his title to the land, &c., on tender by said company to him of the amount which the said arbitrators shall by their award direct, " such amount to be paid, one half in shares of the capital stock of the Boston and Maine Railroad Company, at the par value thereof, free from liability to assessment, and the other half in cash or in said stock, at his option." In pursuance of this agreement, the award, as already stated, fixes the sum, and directs that it be paid " pursuant to the terms and conditions in the bonds aforesaid contained."

The rule of law applicable to such cases is stated in *Morton* v. *Lamb*, 7 T. R. 125, to be that if one party covenant to do one thing in consideration of the other party's doing another, each must be ready to perform his part of the contract, at the time he charges the other with non-performance. This doctrine had then become well established in England, and has ever since

been maintained.   In speaking of the old decisions, which adopted a more technical and artificial view, Lord Kenyon, in *Goodisson* v. *Nunn*, 4 T. R. 761, says, the determinations in them outrage common sense.   See also *Cole* v. *Blunt*, 2 Bosw. 116.   *Lester* v. *Jewett*, 1 Kernan, 453.   *Dana* v. *King*, 2 Pick. 155.   Where the defendants have neglected or refused to perform the contract on request, it is not necessary for the plaintiff to aver in pleading an offer to perform on his part.   The averment of readiness and request is sufficient.   But the reason given for this is, that when one party demands of the other the performance of a mutual agreement, by which concurrent acts are to be performed by each party, an offer on the part of the party making the demand to perform his part of the agreement is implied and understood; and when the other party refuses to comply, he thereby dispenses with any offer.   And when he neglects to comply without assigning any reason for his non-compliance, the effect is the same.   *Tinney* v. *Ashley*, 15 Pick. 546.   *Adams* v. *Clark*, 9 Cush. 215.   *Cook* v. *Doggett*, 2 Allen, 439.

But, according to these cases, there must be actual readiness on the part of the plaintiff to perform his part of the contract, and a request to the defendant.   In the present case, the plaintiff has never made his election whether to take cash or stock, nor has he had a conveyance prepared; and the only request he has made is by bringing this action.   But he contends that he can maintain the action, because the Extension Company, after they had made the tender and request above stated, did not preserve the stock, but soon afterwards disposed of it.   He contends that the offer of the stock to him was like the tender of a specific article due upon a contract, and cites the case of *Des Arts* v. *Leggett*, 16 N. Y. 582, where it was held that, upon tender and refusal, the promisor may keep the article as bailee, or treat it as his own and be liable on the contract.   But this case differs, not only from the one cited, but from the ordinary case of an obligation to deliver a specific chattel.   This is not an action by the company, seeking to enforce the contract on the ground of tender or readiness to perform on their part; but the plaintiff seeks to enforce performance against them, and it

is necessary for him to prove readiness to perform on his part as well as neglect to perform on their part. If the law were otherwise, the absurdity supposed by Lord Kenyon in *Goodisson* v. *Nunn, ubi supra,* might be realized. " Suppose the purchase money of an estate was £40,000, it would be absurd to say that the purchaser might enforce a conveyance without payment, and compel the seller to have recourse to him, who perhaps might be an insolvent person." It is not too much to say that it would be absurd to permit the plaintiff to recover in this action, and leave the defendants to take their chances of litigation for the deed with release of dower, to which they are entitled the moment they perform on their part.

It is also to be observed that the offer of the defendants was unlike the ordinary tender of a specific chattel. The stock, being incorporeal, is incapable of delivery. All that can be delivered is the evidence of ownership, in the form of a certificate made by the officers of the company. The defendants were not bound to deliver a part till the plaintiff was ready to complete the whole contract; and as they could not know how many shares they would be bound to convey till after he made an election, they would be entitled to a reasonable time after he made his election to procure a transfer and certificate, according to his requirement. They went to him with certificates prepared to meet his election either way; but when he refused to elect, they could not be bound to treat either certificate as his; for the certificates and cash amounted to $60,000, and he was not entitled to the whole nor to any specific part of the stock represented by the certificate. If they had brought an action against the plaintiff for damages for refusing to deliver a deed, or a bill in equity against him for specific performance, they might, in order to maintain it, have been bound to keep themselves in constant readiness to pay according to his election; but they happened to be in a position where they could afford to wait till he should move. They had only to take the risk at the utmost of being able to pay the money and deliver the necessary certificates of stock within a reasonable time after he should prepare his deed, and give notice of his election; and it would not

be necessary to deliver the identical certificates or transfer th identical shares which they had tendered to him. They cannot therefore be regarded as holding the certificates which they had prepared as his bailees, nor as releasing his obligation to elect, and prepare his conveyance. That obligation has constantly remained upon him, as preliminary to the enforcement of the contract on his part. And what would be the extent of his claim, if he were to attempt to enforce it at an unseasonable time, need not now be considered. He contends that he is excused from making his election as to the stock, because an act of the legislature was passed May 19th 1845, authorizing the defendants and the Extension Company to unite themselves in one corporation, and by vote of the stockholders of each corporation, passed September 10th 1845, they became united, and have ever since been one corporation; and he says that this made such a change in the character of the stock that it became impossible for the defendants to perform the contract, and to offer him any stock which he would be bound to accept. But the charters of both companies were granted subject to the power of the legislature to make such an alteration; the union of the two companies did not make the Boston and Maine Railroad substantially a new or different enterprise; but on the contrary it tended to perfect the original enterprise, which contemplated a road extending at one end to Boston, and at the other end into Maine; nor does the alteration appear to have been prejudicial to the stockholders; nor was the identity of the corporation changed. It is well settled that such an alteration, under such a charter, does not release the obligation of a subscriber from payment of assessments, nor annul a contract for the sale and delivery of the stock at a future day. The authorities are very numerous. It is sufficient to refer to Redfield on Railways, 95, and *Schenectady & Saratoga Plank Road Co.* v. *Thatcher,* 1 Kernan, 109. See also *Durfee* v. *Old Colony & Fall River Railroad,* 5 Allen, 230. In this case, the contract of the Extension Company to deliver the stock of the Boston and Maine Railroad in payment for land which it had taken for its own track was undoubtedly made by both parties in anticipation of the union of the companies.

Upon the evidence in the case, there is no ground to charge the defendants with any negligence as to the performance of their contract, or want of readiness to perform it. The officers of the Extension Company made the tender prior to the union of the companies, and a sufficient amount of money and at least two hundred shares of stock have been kept on hand, in readiness for the plaintiff whenever he might call for it. Until he should make his election to take more stock, this would be sufficient. The plaintiff, on the other hand, not only refused to accept the money and make an election, and requested the defendants to wait till he should call on them; but, soon after the tender, he attempted to revoke the authority of the arbitrators, and to recover his damages under the provisions of the statutes. His first act in affirmance of the award was the commencement of the present action.